The appellant was tried and convicted in the Criminal District Court of Galveston County, on the 26th of November, 1894, on an indictment charging him with an assault with intent to murder, and his punishment was assessed at confinement in the penitentiary for a term of two years, and from the judgment and sentence he has appealed to this court. The appellant presents four assignments of error.
The first error complained of is to the effect, that the evidence in the case fails to show that defendant, at the time he shot Melton, entertained the specific intent to kill said Melton. The evidence discloses, beyond any question, that defendant shot at Melton with a pistol; that the ball entered in the front of his leg, and came out in rear; and that he was not more than thirty feet from him at the time. And we think the jury were fully warranted in finding that the shot was fired with a fatal purpose on the part of defendant. The same assignment also raises the question of self-defense in the case; the defendant insisting that his defense was complete, and he ought to have been acquitted. Upon this issue there was evidence pro and con. If the jury believed the State's witnesses, there was no self-defense in the case. On the contrary, if they had believed defendant's witnesses, the plea of self-defense was made out. This issue was left to the jury by the charge of the court, and the jury found against the defendant, and we are not inclined to disturb their verdict on that ground.
By the second assignment, the appellant urges that the court should have given the jury a charge on aggravated assault. The evidence shows, that the difficulty began at the house of Melton, the party shot, some time in the night — between 8 and 10 o'clock. By the State's witnesses (Melton, the assaulted party, and his wife), it is shown, that defendant went to the house of the prosecuting witness, Melton, and *Page 83 
called his (Melton's) wife out. She states that she expressed a willingness to go, if her husband would permit. The husband told defendant to come in. He declined, replying that he wished to see her alone. Melton then went out, and, according to his testimony, struck at defendant, but did not know whether he hit him or not. Defendant himself states that he went to Melton's house, by request of Melton's wife, to bring her a bottle of perfume; that he called her out; that Melton came to the door and invited him in; and that, on his declining to come in, Melton got mad and struck him, knocking him off the gallery. Melton followed him and ordered him out of the yard, and he told him he would go, but for him not to advance on him; Melton then went back in the house, and defendant left the yard. Defendant proceeded down that street (Church), and turned the corner into Thirty-second street, about two or three hundred feet from the house of Melton, when Melton (who in the meantime had left his house and was proceeding in the direction defendant had gone) was shot by defendant in the leg.
From the testimony, we gather that it could have been but a short period from the altercation at the house of Melton until defendant shot him. Melton himself says, that after he went back into the house, after he had struck defendant, in a short time he started out after some bread for supper, and his wife corroborated this. But the defendant says that Melton, when he went back into the house, said he would get his gun; that he left the yard, went on down the street, and Melton followed him. Cubbins and his wife (two other witnesses for defendant, and the only others who testify in the case to the shooting) corroborate the defendant. They both tell about the pursuit. Cubbins says they ran by him — defendant ahead, and Melton following him, with his hand extended like he had a pistol. That as defendant passed him he said to him, "Steve, what are you running for?" and defendant replied, "Don't you see that man running me with a gun?" He then turned, and saw Melton following defendant. As Melton turned the corner of Church street into Thirty-second, Steve (defendant) fired. To the same effect is the testimony of Mary Cubbins, except that she says she saw a pistol in Melton's hand, pointed at defendant. Both these witnesses agree in the main with the defendant, and so far as the record discloses they are disinterested, and they are only contradicted in regard to the facts immediately attending the shooting by the witness Melton. The fact that defendant testifies that he was, before any assault made by him, assaulted and knocked off the gallery by Melton (and as to the blow he is not contradicted by Melton or his wife), and that the difficulty, from that time on, was continuous (but a short time intervening between the blow struck at the house and the shooting at the corner of Church and Thirty-second streets), it occurs to us, rendered it necessary that the trial court should have given the jury a charge on aggravated assault. The jury evidently did not believe that the defendant acted in self-defense, and *Page 84 
did not believe him guiltless; yet, if they had been permitted by the charge of the court, they might have found that at the time defendant shot Melton he was excited from a blow recently received from Melton, and this, in connection with the pursuit of Melton, or without such pursuit, rendered him incapable of cool reflection. And so they might have found him guilty of a less grade of offense than an assault with intent to murder, and the fact that they imposed the least punishment for said offense rather strengthens the view. At any rate, this issue was fairly raised by the evidence; and we are of opinion that the evidence, as presented by the record in this case, requiring a charge upon a lesser grade of assault than that of assault with intent to murder, is of such cogency that, had a charge upon aggravated assault been given, it would probably have influenced the finding of the jury; and although no exception was taken to the failure of the court to so charge the jury, and no such charge was asked by defendant, yet for this error of the court we reverse and remand the case. See Sowell v. The State, 32 Texas Criminal Reports, 496, and authorities there cited.
Reversed and remanded.
Judges all present and concurring.